## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| v. | **CRIMINAL ACTION NO. 15-418** |
| **MICHAEL DERENTZ** | |

## MEMORANDUM OPINION

Rufe, J.                                                                        June 16, 2022

Defendant Michael Derentz, a 70-year-old federal inmate, has filed a *pro se* motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act, based on his age, deteriorating vision, and risk of exposure to COVID-19.[1] For the reasons stated below, Derentz's motion will be granted.

### I.   BACKGROUND

On February 29, 2016, Derentz pled guilty to one count of distributing child pornography and one count of possessing child pornography.[2] The Court imposed a sentence of 151 months for the first count and 120 months for the second count, with both terms to run concurrently.[3] Following his appeal, the Third Circuit affirmed the judgment against Derentz.[4] Derentz filed a *pro se* motion for compassionate release in May 2020, in which he argued that his age and medical conditions rendered him especially susceptible to COVID-19.[5] The Court denied the motion without prejudice after determining that Derentz's medical conditions did not constitute

---

[1] Mot. Compassionate Release [Doc. No. 45].

[2] Minute Entry [Doc. No. 12].

[3] J&C [Doc. No. 28] at 2.

[4] Mandate of USCA [Doc. No. 39].

[5] Mot. Compassionate Release [Doc. No. 40].

COVID-19 risk factors, that his sentence reflected the seriousness of his offenses, and that he still posed a risk to the public.[6]

On March 31, 2022, Derentz filed a second *pro se* motion for compassionate release.[7] Derentz asserts that he lost vision in his left eye on August 2, 2020, and that staff at Wills Eye Hospital ("Wills") repaired tears in the retinas of both of his eyes on August 10, 2020.[8] At an appointment on September 28, 2020, Derentz learned that he urgently required another surgery to correct a detached retina in his left eye.[9] However, Bureau of Prisons ("BOP") staff did not return him to Wills until November 3, 2020, at which time he was informed that his left eye was inoperable because too much time had passed.[10] Although Derentz required additional follow-up appointments, he contends that BOP staff took weeks to schedule them.[11]

Derentz argues that his partial blindness and age have jeopardized his ability to safely engage in activities of daily living in prison.[12] Derentz further contends that early release would allow him to obtain medical care without further delay to avoid losing his vision entirely.[13] Derentz also argues, as he did in the first motion, that his age puts him at an increased risk of

---

[6] July 22, 2020 Order [Doc. No. 43] at 4, 6–7.

[7] Mot. Compassionate Release [Doc. No. 45]. Derentz requests that he be placed in home confinement to serve any or all of his remaining sentence. Mot. Compassionate Release [Doc. No. 45] at ECF page 3. If the Court were to release Derentz, "[t]he Sentencing Guidelines provide that '[h]ome detention may be imposed as a condition of probation or supervised release, but only as a substitute for imprisonment.'" *United States v. Somerville*, 463 F. Supp. 3d 585, 604 (W.D. Pa. 2020) (quoting U.S.S.G. § 5F1.2).

[8] Mot. Compassionate Release [Doc. No. 45] at ECF page 2.

[9] Mot. Compassionate Release [Doc. No. 45] at ECF pages 2–3.

[10] Mot. Compassionate Release [Doc. No. 45] at ECF page 3.

[11] Mot. Compassionate Release [Doc. No. 45] at ECF page 3.

[12] Mot. Compassionate Release [Doc. No. 45] at ECF page 3.

[13] Mot. Compassionate Release [Doc. No. 45] at ECF pages 3–4.

severe complications from contracting COVID-19. The warden of FCI Fort Dix denied Derentz's request for compassionate release on December 29, 2021.[14]

## II.   LEGAL STANDARD

An inmate is required to exhaust administrative remedies within the BOP before seeking a sentence reduction pursuant to 18 U.S.C. § 3582.[15] Under § 3582(c), the sentencing court may reduce an inmate's sentence "if it finds that extraordinary and compelling reasons warrant such a reduction."[16] Even if such reasons exist, the "district court must 'consider the factors set forth in 18 U.S.C. § 3553(a) to the extent that they are applicable.'"[17] Further, "all sentence reductions must be 'consistent with applicable policy statements issued by the Sentencing Commission.'"[18] Accordingly, a court may grant a defendant's motion if (1) "extraordinary and compelling reasons" exist, (2) a reduction aligns with relevant Sentencing Commission policy statements, and (3) the § 3553(a) factors support a reduction.[19]

## III.   DISCUSSION

### A.  Exhaustion of Administrative Remedies

As a threshold matter, the Court must determine whether Derentz exhausted his administrative remedies within the BOP before filing this motion. The exhaustion requirement is

---

[14] Mot. Compassionate Release [Doc. No. 45] at ECF page 4.

[15] 18 U.S.C. § 3582(c)(1)(A).

[16] *United States v. Pawlowski*, 967 F.3d 327, 329 (3d Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)(i)) (alterations omitted).

[17] *Id.* (quoting 18 U.S.C. § 3582(a)) (alterations omitted).

[18] *United States v. Andrews*, 12 F.4th 255, 259 n.4 (3d Cir. 2021) (quoting 18 U.S.C. § 3582(c)(1)(A)(ii)). "[T]he Commission has not yet promulgated a post–First Step Act policy statement describing what should be extraordinary and compelling in the context of prisoner-initiated motions." *Id*. at 259.

[19] *Id.* at 258.

3

met if "the defendant has fully exhausted all administrative rights to appeal a failure of the BOP to bring a motion on the defendant's behalf" or 30 days have passed since the warden received the defendant's request for compassionate release.[20] Derentz avers that he made a request for compassionate release to the warden of FCI Fort Dix on December 17, 2020, which the warden denied on December 29, 2021.[21] The government does not dispute that this request fulfilled the exhaustion requirement, so the Court addresses Derentz's motion on the merits.

### B.  "Extraordinary and Compelling" Reasons for Release

Medical conditions may constitute extraordinary and compelling reasons to grant a motion for compassionate release. For example, commentary to the Sentencing Guidelines indicates that "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover" would qualify.[22] Courts have also found that "grossly inadequate treatment" for a defendant's medical condition in BOP custody, including delays in treatment, may qualify as an extraordinary and compelling reason for compassionate release.[23]

---

[20] 18 U.S.C. § 3582(c)(1)(A).

[21] Mot. Compassionate Release [Doc. No. 45] at ECF page 4.

[22] U.S.S.G. § 1B1.13. The Court is not bound to the examples of extraordinary and compelling reasons for compassionate release outlined in the Sentencing Guidelines' pre-First Step Act policy statement, but the Court may use them to guide its interpretation of what circumstances qualify as extraordinary and compelling. *Andrews*, 12 F.4th at 259 n.4.

[23] *United States v. Beck*, 425 F. Supp. 3d 573, 580–82 (M.D.N.C. 2019) (finding that the BOP's delay in arranging a biopsy to diagnose the defendant's breast cancer was an extraordinary and compelling reason for compassionate release); *see also United States v. Roman*, No. 14-43, 2021 WL 3173351, at *4 (S.D. Ohio July 26, 2021) (determining that the BOP's failure to schedule regular appointments for the treatment of the defendant's glaucoma, which resulted in blindness, qualified as an extraordinary and compelling reason for release). The Court notes that an inmate at FCI Fort Dix, the same institution where Derentz is incarcerated, went blind after staff at the prison failed to attend to his glaucoma in a timely manner. *Roman*, 2021 WL 3173351, at *4.

Derentz's medical records indicate that he has not received timely care for his serious ocular conditions on multiple occasions.[24] Although the government contends "that Derentz's vision issues have been attended to both in house at Fort Dix and by physicians at Wills Eye Hospital," notes from Derentz's visits to Wills belie this argument. On August 10, 2020, after losing vision in his left eye, Derentz visited Wills, where he was diagnosed with a vitreous hemorrhage in his left eye and a horseshoe tear of the retina without detachment in his right eye.[25] Although Wills recommended a follow-up appointment in one week, the BOP did not return Derentz to Wills until September 28, 2020, approximately a month and a half later.[26] At that appointment, a doctor indicated that Derentz presented total retinal detachment in his left eye and that he should be scheduled for surgery "this week or early next week."[27] However, Derentz was "[lost to follow-up] from 9/28/20 - 11/3/20, after multiple attempts to reach [the] prison."[28] When Derentz returned to Wills on November 3, 2020, over a month later, surgery

---

[24] In addition to arguing that the BOP has adequately addressed Derentz's medical issues, the government contends that "there is no basis to conclude that Derentz's medical condition places him at any unusual risk while he is incarcerated at FCI Fort Dix." Gov't Resp. [Doc. No. 47] at 9–10. Specifically, the government argues that a prison doctor indicated that Derentz "is able to '[d]ress feed and bath[e] [him]self with no issues." Gov't Resp. [Doc. No. 47] at 9. However, Derentz asserts that he has "only been able to function at all to any extent of my former capacity . . . because of the extremely limited schedules imposed by COVID-19 restrictions." Def.'s Reply [Doc. No. 51] at ECF page 1. Derentz also references "falls and accidents which have occurred" due to his impairment. Def.'s Reply [Doc. No. 51] at ECF page 2.

"[T]he terms of the First Step Act give courts independent authority to grant motions for compassionate release and say[] nothing about deference to [the BOP], thus establishing that Congress wants courts to take a *de novo* look at compassionate release motions." *Beck*, 425 F. Supp. 3d at 587. Despite the contested nature of the degree to which Derentz's conditions impact his ability to function in prison, Derentz has demonstrated that his partial blindness affects his ability to function in a prison environment, and that the BOP's failure to ensure that he receives timely treatment for his ocular conditions constitutes an extraordinary and compelling reason for release.

[25] Mot. Compassionate Release Ex. A [Doc. No. 45] at ECF pages 22–23.

[26] Mot. Compassionate Release Ex. A [Doc. No. 45] at ECF pages 17, 22–23.

[27] Mot. Compassionate Release Ex. A [Doc. No. 45] at ECF pages 17–18.

[28] Mot. Compassionate Release Ex. A [Doc. No. 45] at ECF page 12.

was no longer recommended due to changes in the condition of his left eye.[29] In short, the BOP's repeated delays contributed to Derentz becoming partially blind.

The BOP returned Derentz to Wills on November 25, 2020, and his condition remained the same.[30] Although Derentz should have returned for another appointment in six to eight weeks, the BOP did not arrange for another appointment until April 22, 2021, nearly five months later.[31] At that time, Derentz's condition was stable and the doctor recommended that he return for another appointment in six months.[32] Derentz had an optometry exam at FCI Fort Dix on September 27, 2021, and the optometrist requested that he be scheduled for his follow-up appointment at Wills in October of 2021.[33] Despite marking the request as "urgent," Derentz was not taken to Wills for follow up until November 10, 2021.[34] Derentz's condition remained stable, and staff at Wills recommended that he return again in six months.[35]

The BOP's repeated delays in scheduling Derentz for follow-up appointments, even after staff at Wills attempted to contact FCI Fort Dix multiple times to arrange his surgery, are deeply concerning. The BOP's history of failing to timely schedule appointments gives the Court little confidence that Derentz could obtain an urgently needed procedure if, or more likely when, his

---

[29] Mot. Compassionate Release Ex. A [Doc. No. 45] at ECF pages 12–13.

[30] Gov't Exhibit A [Doc. No. 48] at ECF page 86.

[31] Gov't Exhibit A [Doc. No. 48] at ECF pages 4, 221. Medical providers at FCI Fort Dix were aware of the need for a follow-up appointment, as Derentz's medical records note that the retinal specialists at Wills "wanted to see [Derentz] again in 6 weeks which was mid[-]February for evaluation of both eyes." Gov't Exhibit A [Doc. No. 48] at ECF page 4.

[32] Gov't Exhibit A [Doc. No. 48] at ECF page 225.

[33] Gov't Exhibit A [Doc. No. 48] at ECF page 129.

[34] Gov't Exhibit A [Doc. No. 48] at ECF page 190.

[35] Gov't Exhibit A [Doc. No. 48] at ECF page 194.

vision deteriorates further.[36] Indeed, a lack of follow up after his appointments in the fall of 2020

rendered Derentz's left eye inoperable, and a practitioner at Wills noted that Derentz was "a poor

surgical candidate as he has not been able to establish proper follow up that would be required in

the postoperative period."[37] Derentz also asserts that the BOP has failed to provide him with new

glasses despite the fact that he received a prescription in September of 2021.[38] Accordingly, the

BOP's repeated delays in arranging for care to protect Derentz's vision constitute an

extraordinary and compelling reason for release.

### C.  18 U.S.C. § 3553(a) Sentencing Factors

Even where an extraordinary and compelling reason for release is established, the Court

must evaluate the sentencing factors enumerated in 18 U.S.C. § 3553(a). The relevant § 3553(a)

factors include:

> (1) the nature and circumstances of the offense and the history and characteristics
> of the defendant;
>
> (2) the need for the sentence imposed--
>
>> (A) to reflect the seriousness of the offense, to promote respect for the
>> law, and to provide just punishment for the offense;
>> (B) to afford adequate deterrence to criminal conduct;
>> (C) to protect the public from further crimes of the defendant; and
>> (D) to provide the defendant with needed educational or vocational
>> training, medical care, or other correctional treatment in the most effective
>> manner; . . . [and]

---

[36] The record suggests that Derentz's right eye is likely to worsen. On November 3, 2020, a practitioner at Wills noted Derentz's "poor visual prognosis." Gov't Exhibit A [Doc. No. 48] at ECF page 194. Further, on November 17, 2020, a doctor at Fort Dix opined that Derentz "is at a high risk of vision loss" and "is functionally monocular at this point." Gov't Exhibit A [Doc. No. 48] at ECF page 11. In his motion, Derentz asserts that floaters obscure his vision in his right eye. Mot. Compassionate Release [Doc. No. 45] at ECF page 3.

[37] Mot. Compassionate Release Ex. A [Doc. No. 45] at ECF page 13.

[38] Def.'s Reply [Doc. No. 51] at ECF page 2.

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.][39]

Derentz's convictions are undeniably serious. Derentz, a retired Philadelphia school teacher, possessed hundreds of images and videos depicting child pornography, as well as thousands of images and videos that showed young children in various states of undress, on his computers and external hard drive.[40] The materials that investigators discovered included content that depicted sadistic, masochistic, or violent conduct involving children.[41] Fourteen known victims were identified among the children depicted in Derentz's collection.[42] Additionally, Derentz admitted to a U.S. Probation Officer that he had kissed and fondled a former student when she visited him two to three years after her eighth-grade graduation.[43] After fully considering all relevant factors, the Court imposed a sentence of 151 months—the low end of the Sentencing Guidelines range.[44]

However, Derentz's crimes have not gone unpunished, and there is evidence that he has sought to better himself while in prison. Derentz has been incarcerated for approximately 60 months, the mandatory minimum sentence for his conviction for distribution of child pornography.[45] He is required to pay restitution in the amount of $3,000 to a child victim identified in his pornography collection.[46] Derentz states that he "look[s] forward to meaningful

---

[39] 18 U.S.C. § 3553(a).

[40] Presentence Report ¶¶ 8, 10, 66.

[41] Presentence Report ¶ 22.

[42] Presentence Report ¶ 13.

[43] Presentence Report ¶ 53.

[44] J&C [Doc. No. 28] at 2.

[45] Gov't Resp. [Doc. No. 47] at 10.

[46] J&C [Doc. No. 28] at 6.

therapy to address the reasons for [his] behavior."[47] While incarcerated, Derentz has been involved in GED tutoring, participated in Adult Continuing Education courses, and has not committed any significant disciplinary infractions.[48] Derentz's Recidivism Risk Assessment score is low.[49] Further, Derentz points to statistics indicating that sex offenders have lower rates of recidivism than other offenders.[50]

On the current record, Derentz has shown that he would not pose a danger to the community if his sentence were reduced, assuming that appropriate conditions of supervised release were imposed.[51] Although the government contends that Derentz has failed "to demonstrate how release, [60] months into a 151-month sentence for a child exploitation offense, reflects the seriousness of the offense, promotes respect for the law, and provides just punishment for the offense," Congress established a mandatory minimum sentence for Derentz's distribution offense. Derentz has already served a period of incarceration equivalent to that term, and a sentence that aligns with the statutorily prescribed minimum is consistent with respect for the law. Further, the Court will extend the term of supervised release from five to ten years and impose home confinement for two years as a condition of the supervised release. These restrictions result in a sentence comparable to those imposed on similarly situated offenders and

---

[47] Mot. Compassionate Release [Doc. No. 45] at ECF page 6.

[48] Mot. Compassionate Release [Doc. No. 45] at ECF pages 4–5.

[49] Mot. Compassionate Release [Doc. No. 45] at ECF page 30.

[50] Def.'s Reply [Doc. No. 51] at ECF pages 2–3.

[51] Derentz asserts that he has completed about sixty percent of his sentence because his "elderly offender two-thirds date is 10/03/2025." Mot. Compassionate Release [Doc. No. 45] at ECF page 5. This calculation is incorrect as elderly offenders who have been convicted under 18 U.S.C. § 2252 are ineligible for release to home detention under the BOP's pilot program. 34 U.S.C. § 60541(g)(5)(A)(ii).

reflect the seriousness of the offenses.[52] Importantly, Derentz contends that release to home confinement would allow him to seek alternative medical opinions about his eye conditions, which could help him avoid further vision loss.[53]

The government also fails to acknowledge that Derentz would not be at liberty if released; he would instead be subject to significant supervision and restrictions. Upon release, Derentz will be required to register as a sex offender, engage in sex offender treatment, and report regular contact with minors to the U.S. Probation Office.[54] Although the government argues that "all Defendant requires to offend again is an Internet connection,"[55] Derentz must submit to the examination of his computers and other devices and consent to the installation of programs to monitor his internet use.[56] Additionally, Derentz enjoys the support of family and friends, and Derentz notes that he will live with his wife in their shared home if released.[57] Upon balancing of all of the relevant factors, the Court concludes that imposing a period of home confinement in addition to the conditions of supervised release previously imposed will serve to protect the public and reflect the seriousness of Derentz's offenses.[58]

---

[52] Gov't Resp. [Doc. No. 47] at 11; *see Somerville*, 463 F. Supp. 3d at 604–05 (noting that "converting roughly the remainder of [the defendant's] prison time to a period of probation with home confinement is appropriate and the kind of sentence that is available under the Guidelines.").

[53] Mot. Compassionate Release [Doc. No. 45] at ECF page 3.

[54] J&C [Doc. No. 28] at 5.

[55] *United States v. Perri*, No. 15-486, 2020 WL 6324384, at *3 (E.D. Pa. Oct. 28, 2020).

[56] J&C [Doc. No. 28] at 5.

[57] Mot. Compassionate Release [Doc. No. 45] at ECF page 6.

[58] 18 U.S.C. § 3582(c)(1)(A) (allowing the sentencing court to "impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment.").

**IV.  CONCLUSION**

It is disturbing that the BOP has failed to attend to Derentz's eye conditions in a timely manner. Delays in securing urgently needed follow-up appointments contributed to Derentz becoming blind in his left eye. These unexplained, unjustified delays constitute an extraordinary and compelling reason for release, and the § 3553(a) sentencing factors weigh in favor of granting Derentz's motion. Derentz's remaining term of imprisonment will be reduced to time served and his term of supervised release will be extended to ten years with the same conditions imposed in his original judgment. Derentz will be placed on home confinement for the first 24 months of his term of supervised release, subject to location monitoring by the U.S. Probation Office. An order will be entered.